**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CRYSTAL NICOLE SMITH-SCHAEFFER, ) ) ) Plaintiff, ) ) v. ) ) COMMISSIONER OF ) SOCIAL SECURITY, ) ) Defendant. ) | Civil Action No. 12-1374 **ELECTRONICALLY FILED** |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Crystal Nicole Smith-Schaeffer ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 – 1383f ("Act"). This matter comes before the Court upon cross-motions for summary judgment. (ECF Nos. 11, 13). The record has been developed at the administrative level. For the following reasons, Plaintiff's Motion for Summary Judgment will be GRANTED, in part, and DENIED, in part, and Defendant's Motion for Summary Judgment will be DENIED.

**II.     PROCEDURAL HISTORY**

Plaintiff filed for SSI with the Social Security Administration on June 1, 2009, claiming an inability to work due to disability beginning September 1, 2003. (R. at 70 – 76)[1]. At that time, Plaintiff claimed to be unable to work as a result of intellectual deficits. (R. at 86). Plaintiff was initially denied benefits on August 28, 2009. (R. at 27 – 30). A hearing was scheduled for December 10, 2010. (R. at 19 – 24). Plaintiff did not appear to testify. (R. at 19 – 24). Her attorney did not show cause for her absence. (R. at 19 – 24). The Administrative Law Judge ("ALJ") thereafter issued a decision denying benefits to Plaintiff on February 4, 2011. (R. at 7 – 18). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on August 9, 2012, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 1 – 5).

Plaintiff filed her Complaint in this Court on September 25, 2012. (ECF No. 3). Defendant filed an Answer on January 8, 2013. (ECF No. 6). Cross-motions for summary judgment followed.

**III.    STATEMENT OF THE CASE**

In his decision denying SSI to Plaintiff, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since May 19, 2009, the application date;
2. The claimant has the following severe impairment: mental retardation;
3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;
4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to unskilled work;
5. The claimant has no past relevant work;

---

[1]     Citations to ECF Nos. 7 – 7-8, the Record, *hereinafter*, "R. at __."

6. The claimant was born on September 19, 1983 and was 25 years old, which is defined as a younger individual age 18 – 49, on the date the application was filed;
7. The claimant has a limited education and is able to communicate in English;
8. Transferability of job skills is not an issue because the claimant does not have past relevant work;
9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform; and
10. The claimant has not been under a disability, as defined in the Social Security Act, since May 19, 2009, the date the application was filed.

(R. at 12 – 15).

### IV.   STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schandeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F. 3d 43, 46 (3d Cir. 1994). A United States District Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 1190 – 1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F. 3d 358, 360 (3d Cir. 1999). "Overall, the substantial

evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F. 3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Serv.*, 841 F. 2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F. 2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions.  He or she must make specific findings of fact.  *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F. 2d 287, 290 (3d Cir. 1983).  The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence.  *Weir on Behalf of Weir v. Heckler*, 734 F. 2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F. 2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule-making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act.  The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability

> unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision.  In *Sec. & Exch. Comm'r v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context.  *Fargnoli v. Massanari*, 247 F. 3d 34, 44, n. 7 (3d Cir. 2001).  Thus, the Court's review is limited to the four corners of the ALJ's decision.

V. **DISCUSSION**

In her brief, Plaintiff argues that the ALJ committed error requiring either reversal or remand, because he failed to adequately assess Plaintiff's eligibility for benefits under 20 C.F.R., Pt. 404, Subpt. P, App'x 1, Listing 12.05 (Mental Retardation), he failed to address evidence of physical impairment and limitation, and he failed to provide a "particularized, function by function" residual functional capacity ("RFC") assessment. (ECF No. 14 at 5 – 18). Defendant counters that the ALJ properly supported his decision with substantial evidence from the record, and should be affirmed by this Court. (ECF No. 12 at 8 – 10). The Court agrees with Plaintiff, in part.

With respect to Plaintiff's first argument, it is alleged that Plaintiff met the requirements for disability under part C of Listing 12.05. 12.05(C) provides, in relevant part that:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> …
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R., Pt. 404, Subpt. P, App'x 1, Listing 12.05(C). The United States Court of Appeals for the Third Circuit has read this listing as requiring a claimant to make two showings: (1) that evidence demonstrates subaverage general intellectual functioning with deficits in adaptive functioning prior to a claimant reaching age twenty-two, and (2) that evidence demonstrates an IQ score of 60 – 70 in conjunction with a physical or other mental impairment. *Cortes v.*

*Comm'r Soc. Sec.*, 255 Fed. App'x 646, 651 (3d Cir. 2007); *Stremba v. Barnhart*, 171 Fed. App'x 936, 938 (3d Cir. 2006).  *See also Markle v. Barnhart*, 324 F. 3d 182, 187 (3d Cir. 2003).

As to the first prong of the above test, the record evidence demonstrates that Plaintiff was first evaluated at the age of seven for intellectual deficits by a school counselor.  (R. at 104).  At that time – in November of 1990 – Plaintiff was in the first grade, but was considered to have pre-first grade-level reading, spelling, and mathematics skills.  (R. at 105).  Her IQ was noted to be 67.  (R. at 105, 107).  Plaintiff exhibited difficulty with rote memory, concentration, forming complete sentences, and following instructions.  (R. at 107).  In school, she relied upon her peers for answers.  (R. at 107).

Plaintiff was again assessed in January of 1991, this time by the school psychologist.  Findings indicated that Plaintiff was physically restless, hyperdistractible, very impulsive, inattentive after a few seconds without repeated encouragement, and unable to follow directions.  (R. at 127).  She was quick to respond to questions with, "I don't know."  (R. at 127).  Testing revealed that Plaintiff's verbal IQ was 77, her performance IQ was 81, and her full scale IQ was 77.  (R. at 128).  In terms of school achievement, independent school functioning, nonacademic school adjustment, and perceptual-motor development, Plaintiff was considered to be "seriously deficient" for her age.  (R. at 129).  In terms of language development, self-help skills, and peer relationships, she was "below average" for her age.  (R. at 129).  Plaintiff's deficits were believed to indicate mental retardation.  (R. at 131).

Plaintiff was the recipient of learning support services from that point onward.  (R. at 108).  As a result, she made satisfactory progress in her schooling based upon her level of intellectual functioning.  (R. at 108 – 10).  In an April 1999 assessment conducted when Plaintiff was in the ninth grade, she was noted to exhibit appropriate behavior and interacted

appropriately with others. (R. at 109). Plaintiff required structured activities, had difficulty working independently, and required extra time to complete assignments. (R. at 109, 112). Adaptations required to meet Plaintiff's academic needs were "extensive." (R. at 110 – 11). Nonetheless, performance in "occupation education" was above average. (R. at 109, 111). Plaintiff was observed to be motivated, she understood directions, and she asked appropriate questions. (R. at 109, 111). Her performance in reading and mathematics was several grade levels below that of her peers, however. (R. at 110, 112 – 13). Plaintiff was to continue receiving special educational support and specially designed instruction. (R. at 112 – 13). These findings were largely reiterated in a May 2000 assessment. (R. at 115 – 26).

The only IQ testing conducted during Plaintiff's adulthood occurred in a Psychological Report and Individual Intellectual Evaluation completed by licensed psychologist Mark M. Snyder, M.A. on August 21, 2009, when Plaintiff was twenty five years of age. (R. at 162). Testing revealed that Plaintiff's verbal IQ was 77, her performance IQ was 70, and her full scale IQ was 72. (R. at 163). Dr. Snyder opined that testing results were an accurate assessment of Plaintiff's level of functioning. (R. at 163). He also opined that, within a 95% confidence interval, Plaintiff's full scale IQ ranged from 68 – 77. (R. at 163). 20 C.F.R., Pt. 404, Subpt. P, App'x 1, 12.00(D)(6)(c) (Mental Disorders) states that "[i]n cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." As such, Plaintiff's performance IQ of 70 meets the requirements of 12.05(C).

In light of this history, Plaintiff meets the first prong required by 12.05(C). Yet, Plaintiff's argument falters at the second prong. Proof of "a physical or other mental impairment imposing an additional and significant work-related limitation of function," is problematic for

Plaintiff. While Plaintiff was found by the ALJ to have a medically determinable severe impairment in the way of mental retardation, 12.05(C) requires the existence of either *another* mental impairment, or a physical impairment. *Hartzog v. Barnhart*, 189 Fed. App'x 98, 100 (3d Cir. 2006) (citing *Williams v. Sullivan*, 970 F. 2d 1178, 1184 (3d Cir. 1992)). Although Plaintiff decries the ALJ's failure to adequately discuss the RFC of Dr. Heil, in fact, there was little to discuss.

Dr. Snyder recorded that Plaintiff dropped out of high school in the tenth grade when she became pregnant, and that she never pursued a graduate equivalent diploma ("GED"). (R. at 162). Plaintiff's work history was minimal. (R. at 163). Dr. Snyder observed that Plaintiff interacted easily, followed directions, put forth effort, and made good eye contact during her examination. (R. at 163). She did not exhibit speech or thought disorder. (R. at 163). Dr. Snyder concluded that Plaintiff functioned within the range of mild mental retardation to borderline intellectual functioning. (R. at 163). She had only slight limitation carrying out detailed instructions and making judgments on simple work-related decisions. (R. at 164 – 65).

On August 27, 2009, state agency evaluator Richard A. Heil, Ph.D. completed a Mental RFC assessment of Plaintiff. (R. at 168 – 71). Based upon his review of the case record, Dr. Heil concluded that the evidence supported finding impairment in the way of Mental Retardation. (R. at 168 – 71). As a result, he believed that Plaintiff would experience moderate limitation with respect to carrying out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. (R. at 168 – 71). Dr.

Heil further remarked that, in spite of her limitations, Plaintiff was capable of simple, routine, repetitive work in a stable environment. (R. at 168 – 71).

The ALJ noted that neither Dr. Snyder nor Dr. Heil found Plaintiff to have mental impairments outside of mental retardation or borderline intellectual functioning. (R. at 14). Plaintiff points to no other objective medical evidence establishing other mental impairments which could qualify Plaintiff for disability under 12.05(C). Although the ALJ's discussion of these doctors' findings was concise, it was adequate for this purpose, nonetheless. Plaintiff provides this Court with no reason to believe that a more thorough discussion would have altered the outcome of this case.

Additionally, the failure by the ALJ to discuss the limited medical findings regarding Plaintiff's alleged physical impairments was not error. The record shows that Plaintiff complained of "migraines" in September 2004. (R. at 155). She did not complain of headaches again until March 2009. (R. at 145). An MRI of the brain in March 2010 revealed two small, nonspecific foci of T2 hypersensitivity in the left frontal lobe of Plaintiff's brain. (R. at 190 – 91). This may have represented migraine sequela, demyelination, or possibly vasculitis. (R. at 190 – 91). The MRI was otherwise normal. (R. at 190 – 91). Throughout Plaintiff's medical record, there is no evidence of a formal diagnosis of migraines by any of Plaintiff's treating medical sources. There were no findings of functional limitations, either. Despite her complaints, the sparse treatment record provided no evidence of ongoing treatment for migraines, or anything more than the use of ibuprofen for pain. Similarly, while Plaintiff complained of back pain as late as July 2010, an MRI of the lumbar spine from November 2009 was unremarkable. (R. at 186, 197). There was no indication of treatment or notable limitation

stemming from alleged back pain. Plaintiff's alleged "fatigue" also lacked support in the record which would tend to indicate impairment or limitation.

The United States Court of Appeals for the Third Circuit has held that it is not expected that an ALJ make reference to every relevant note, and it is certainly not expected that an ALJ discuss evidence which is not probative. *Fargnoli v. Massanari*, 247 F. 3d 34, 42 (3d Cir. 2001); *Johnson v. Comm'r of Soc. Sec.*, 529 F. 3d 198, 203 – 04 (3d Cir. 2008). Where, as here, medical findings do not provide support for the existence of additional impairment or functional limitations, there is simply no need for an ALJ to discuss said evidence. *Hur v. Barnhart*, 94 Fed. App'x 130, 133 (3d Cir. 2004); *Phillips v. Barnhart*, 91 Fed. App'x 775, 780 (3d Cir. 2004). The ALJ's omission of Plaintiff's physical condition from his discussion was not error requiring remand.

Plaintiff's final contention is that the ALJ erred when deciding that Plaintiff was limited only to unskilled work. (ECF No. 14 at 15 – 18). "Unskilled work" is defined as:

> work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. §§ 404.1568(a), 416.968(a). The ALJ's RFC assessment was no more specific than this description. (R. at 13). The ALJ purportedly relied upon the findings of Dr. Heil to a significant degree when formulating this RFC. (R. at 14). Yet, the ALJ failed to indicate how "unskilled work," as defined by regulation, accommodated findings by Dr. Heil that Plaintiff experienced moderate limitation with respect to carrying out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule,

maintaining regular attendance, being punctual within customary tolerances, completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. (R. at 168 – 71). While the definition of unskilled work may arguably encompass Plaintiff's limitations with respect to carrying out detailed instruction and maintaining attention and concentration, it does little to address Dr. Heil's other limitations findings.

An RFC must encapsulate credible limitations supported by the medical record. *Orbin v. Barnhart*, 38 Fed. App'x 822, 823 (3d Cir. 2002) (citing *Chrupcala v. Heckler*, 829 F. 2d 1269, 1276 (3d Cir. 1987)). If the ALJ did not believe that all of the limitations found by Dr. Heil required accommodation, he did not provide his rationale. This was clear error. "[T]he ALJ's finding of residual functional capacity must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" *Fargnoli*, 247 F. 3d at 41 (quoting *Cotter v. Harris*, 642 F. 2d 700, 704 (3d Cir. 1981)). To conclude in the present case that the ALJ's RFC assessment was supported by substantial evidence "approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Stewart v. Sec'y of Health, Educ. and Welfare*, 714 F. 2d 287, 290 (3d Cir. 1983) (quoting *Arnold v. Sec'y of Health, Educ. and Welfare*, 567 F. 2d 258, 259 (4th Cir. 1977)). A more thorough explanation of the RFC assessment is necessary.

## VI. CONCLUSION

Based upon the foregoing, the court finds that substantial evidence did not support the ALJ's RFC assessment. "On remand, the ALJ shall fully develop the record and explain [his or her] findings . . . to ensure that the parties have an opportunity to be heard on the remanded issues and prevent *post hoc* rationalization" by the ALJ. *Thomas v. Comm'r of Soc. Sec.*, 625 F.

3d 798, 800 – 01 (3d Cir. 2010).  *See also Ambrosini v. Astrue*, 727 F. Supp. 2d 414, 432 (W.D. Pa. 2010).  Testimony need not be taken, but the parties should be permitted input via submissions to the ALJ.  *Id.* at 801 n. 2.

Accordingly, Plaintiff's Motion for Summary Judgment will be granted, in part, and denied, in part; Defendant's Motion for Summary Judgment will be denied; and, the decision of the ALJ will be vacated and the case remanded for further consideration consistent with this opinion.  Appropriate orders follow.

> */s Arthur J. Schwab*
> Arthur J. Schwab
> United States District Judge

cc/ecf:  All counsel of record.